309 F.3d 530
 Arthur L. McDONALD; Rita McDonald; Karla McDonald; Justin D. McDonald, Plaintiffs,
v.
Patti MEANS; Kale Means, Defendants,
The Northern Cheyenne Tribe, Intervenor-Appellant,
v.
USDC-Billings, Appellee.
Arthur L. McDonald; Rita McDonald; Karla McDonald; Justin D. McDonald, Plaintiffs-Appellees,
v.
Patti Means; Kale Means, Defendants-Appellants.
 No. 00-36166.
 No. 00-35002.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 6, 2001.
 Filed August 14, 2002.
 Amended October 18, 2002.
 
 COPYRIGHT MATERIAL OMITTED Steven A. Kelly, Lame Deer, MT, for the intervenor-appellant.
 Clarence Belue, Billings, MT, for the defendants-appellants.
 Gregory G. Murphy, Moulton, Bellingham, Longo & Mather, P.C., Billings, MT, for the plaintiffs-appellees.
 Appeal from the United States District Court for the District of Montana; Jack D. Shanstrom, District Judge, Presiding. D.C. No. CV-99-00064-JDS.
 Before: BROWNING, WALLACE and T.G. NELSON, Circuit Judges.
 
 ORDER
 
 1
 The Petition for Rehearing in No. 00-35002 is denied and the Suggestion for Rehearing En Banc in No. 00-35002 is denied. The opinion issued August 14, 2002 is amended, and Judge Wallace amends his dissent. The amendments to the opinion are as follows:
 
 
 2
 1. In the first sentence of the first paragraph on page 11924 [300 F.3d 1037, 1040], replace the word "broad" with the word "considerable."
 
 
 3
 2. Delete the second sentence in the first paragraph on page 11924 [300 F.3d at 1040] and its accompanying citation to Iowa Mutual [Ins. Co. v. LaPlante, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987)] and delete the second and third paragraphs in footnote 2.
 
 
 4
 3. In the third sentence of the second paragraph on page 11926 [300 F.3d at 1041], replace the words "Route 5 is a tribal road" with "BIA roads like Route 5 are tribal roads".
 
 
 5
 4. Add the following text and footnote to the end of the first sentence of the first full paragraph on page 11927 [300 F.3d at 1042]:, "for the direct benefit of the tribe.[4]"
 
 
 
 [4]
 Strate rejected the argument that Montana did not govern because the land underlying the conveyed right-of-way was held in trust for the tribe. 520 U.S. at 454, 117 S.Ct. 1404. In Strate, the right-of-way itself was conveyed wholly to the state. Here, however, both the underlying land and the right-of-way itself were conveyed in trust for the tribe.
 
 
 [5]
 Following the first full paragraph on page 11930 [300 F.3d at 1043], add the following paragraph and footnote:
 McDonald argues that the majority's analysis "is not consistent with" the Supreme Court's decision in Nevada v. Hicks, 533 U.S. 353, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001), that the ownership status of land is not dispositive in determining that a tribal court lacks jurisdiction over a civil claim against state officers who enter tribal land to execute a search warrant against a tribe member suspected of having violated state law outside the reservation. 533 U.S. at 360, 121 S.Ct. 2304. However, the Court noted that "[o]ur holding in this case is limited to the question of tribal-court jurisdiction over state officers enforcing state law. We leave open the question of tribal-court jurisdiction over nonmember defendants in general." Id. at 358, n. 2, 121 S.Ct. 2304; see also id. at 386, 121 S.Ct. 2304 (Ginsburg, J., concurring) (writing separately to emphasize that the question of tribal jurisdiction over other nonmember defendants remains open). The limited nature of Hicks's holding renders it inapplicable to the present case.[9]
 
 
 [9]
 McDonald argues that Hicks suggests the rule in Montana should be extended to bar tribal jurisdiction not only over the conduct of nonmembers on non-Indian fee land but on tribal land as well. See 533 U.S. at 359, 121 S.Ct. 2304 (interpreting Montana to state a "`general proposition [that] the inherent sovereign powers of an Indian Tribe do not extend the activities of nonmembers of the tribe' except to the extent `necessary to protect tribal self-government or to control internal relations'"). Montana itself limited its holding to nonmember conduct on non-Indian fee land, 450 U.S. at 557, 101 S.Ct. 1245 ("[T]he power of the Tribe to regulate non-Indian fishing and hunting on reservation land owned in fee by nonmembers of the Tribe."), and Strate confirmed that limitation, 520 U.S. at 446, 117 S.Ct. 1404 ("Montana thus described a general rule that ... Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation....). Even if Hicks could be interpreted as suggesting that the Montana rule is more generally applicable than either Montana or Strate have allowed, Hicks makes no claim that it modifies or overrules Montana.
 
 
 
 6
 The Supreme Court has cautioned that "if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." Agostini v. Felton, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (quoting Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)). Montana limits its scope to a Tribe's civil authority over the conduct of nonmembers on non-Indian fee land, and Strate affirms that limitation. Our holding therefore fits squarely within Montana, which both Strate and Hicks characterize as the "pathmarking case." See Hicks, 533 U.S. at 358, 121 S.Ct. 2304; Strate, 520 U.S. at 445, 117 S.Ct. 1404.
 
 
 7
 6. Add the following footnote to the last sentence of the last paragraph on page 11930 [300 F.3d at 1043]:
 
 
 8
 As an Ogalala Sioux, McDonald is also subject to the criminal jurisdiction of the Northern Cheyenne Tribal Court. See 25 U.S.C. § 1301(2) (establishing "the inherent power of Indian tribes... to exercise criminal jurisdiction over all Indians"); United States v. Enas, 255 F.3d 662 (2001) (en banc), cert. denied, 534 U.S. 1115, 122 S.Ct. 925, 151 L.Ed.2d 888 (2002). Thus the tribal court in this case is merely exercising civil jurisdiction over a defendant whom it could prosecute criminally.
 
 
 9
 The amendments to the dissent are as follows:
 
 
 10
 1. On page 11933 [300 F.3d at 1045], delete the second sentence of the first full paragraph, and its accompanying citation.
 
 
 11
 2. On page 11933 [300 F.3d at 1045], first full paragraph, change "A tribe also, with two exceptions, lacks the ..." to "With two exceptions, a tribe lacks the..." Change the citation of this sentence from "Montana, 450 U.S. at 563-66, 101 S.Ct. 1245" to "Id. at 563-66, 101 S.Ct. 1245."
 
 
 12
 3. On page 11933 [300 F.3d at 1045], change the block-quote to a regular quote beginning at "the inherent sovereign powers..."
 
 
 13
 4. On page 11934 [300 F.3d at 1046], line 22, change "three cases" to "two cases."
 
 
 14
 5. On pages 11935-11937 [300 F.3d at 1046-48], delete paragraphs discussing Iowa Mutual, i.e. delete the paragraphs beginning at second full paragraph on page 11935 [300 F.3d at 1046] ("The third case ...") to the paragraph ending on page 11937 [300 F.3d at 1047-48].
 
 
 15
 6. On page 11937 [300 F.3d at 1047-48]: replace the second full paragraph with the following:
 
 
 16
 Consequently, and contrary to the majority's position, no current authority from the Supreme Court or from any circuit court supports the view that the Montana rule does not apply to tribal land cases. In fact, the opposite is true. The recent Supreme Court decision of Nevada v. Hicks, 533 U.S. 353, 359-60, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) interpreted Montana to apply to tribal land cases. Specifically, the Supreme Court emphasized that Montana's caution that "Indian tribes retain inherent sovereignty over non-Indians on their reservations, even on non-Indian fee lands," 450 U.S. at 565, 101 S.Ct. 1245, clearly implies "that the general rule of Montana applies to both Indian and non-Indian land." 533 U.S. at 359-60, 121 S.Ct. 2304. Hicks thus clarified that "the existence of tribal ownership is not alone enough to support regulatory jurisdiction over nonmembers." Id. at 360, 121 S.Ct. 2304.
 
 
 17
 The majority throws Hicks aside because of the limited nature of Hicks' holding. While I agree that Hicks is "limited to the question of tribal-court jurisdiction over state officers enforcing state law," id. at 358, n. 2, 121 S.Ct. 2304, Hicks' interpretation of Montana should nonetheless guide our decision. The majority's reliance on Agostini v. Felton, 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997), misses the mark. Agostini warns us that "if a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls." Id. at 237, 117 S.Ct. 1997. Yet here, no Supreme Court precedent has direct application, and Hicks did not reject the reasons of its prior cases, but merely interpreted them.
 
 
 18
 7. On page 11937 [300 F.3d at 1047-48]: replace first three sentences (and 3rd sentence's citation) of the third full paragraph with the following:
 
 
 19
 When confronted with a question of first impression, it is our duty to consider how the "Supreme Court would decide the pending case today." Vukasovich, Inc. v. Commissioner, 790 F.2d 1409, 1416 (9th Cir.1986). We must examine the thrust of the Supreme Court cases in this area and determine, as best we can, where the Court is leading us. Hicks, though limited, counsels us to extend the Montana rule to tribal land cases. Even before Hicks, the Supreme Court has repeatedly stated that its decisions on the subject of tribal inherent authority rest on the "general proposition" that "the inherent sovereign powers of an Indian tribe ... do not extend to the activities of nonmembers of the tribe." Strate, 520 U.S. at 445-46, 117 S.Ct. 1404 (citation and quotation marks omitted).
 
 
 20
 8. Insert the following paragraphs at the end of the dissent:
 
 
 21
 One final matter warrants attention. In a footnote, the majority suggests that its conclusion is supported by the fact that "the tribal court in this case is merely exercising civil jurisdiction over a defendant whom it could prosecute criminally." This footnote suggests that tribal civil jurisdiction may be analyzed by an Indian/non-Indian distinction, rather than the member/nonmember distinction. I separate myself from this dicta, and mention that this, too, is an open question.
 
 
 22
 The majority cites United States v. Enas, 255 F.3d 662 (9th Cir.2001) (en banc), which held that tribes retain inherent sovereignty to exercise criminal jurisdiction over Indians, irrespective of whether the Indian defendant is a member of the tribe. Yet Enas did not determine whether tribes retain inherent sovereignty to exercise civil jurisdiction over nonmember Indians. Though Congress has restored tribal criminal jurisdiction over nonmember Indians in 25 U.S.C. § 1301(2), it has not delegated this authority in civil disputes.
 
 
 23
 Neither the Supreme Court nor the Ninth Circuit has answered the question of tribal civil jurisdiction over nonmember Indians. However, the Supreme Court hints that even if the defendant is an Indian, his status as a nonmember governs the court's analysis. Hicks, 533 U.S. at 377, n. 2, 121 S.Ct. 2304 (Souter, J., concurring) ("the relevant distinction, as we implicitly acknowledged in Strate, is between members and nonmembers of the tribe"); Strate, 520 U.S. at 445-46, 117 S.Ct. 1404 (stating that a tribe's inherent sovereign powers "do not extend to the activities of nonmembers," and on the same page recognizing that some tribal nonmembers are also Indians) (internal citation omitted); Washington v. Confederated Tribes of Colville Reservation, 447 U.S. 134, 161, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) (holding that state's taxing power over nonmember Indians is equivalent to its taxing power over non-Indians because "nonmembers are not constituents of the governing Tribe. For most practical purposes those Indians stand on the same footing as non-Indians resident on the reservation. There is no evidence that nonmembers have a say in tribal affairs or significantly share in tribal disbursements."). Because the majority's footnote is dicta, and merely suggests (but does not decide) that civil jurisdiction may be analyzed under the Indian/non-Indian distinction, I state no opinion on the matter here.
 
 OPINION
 
 24
 JAMES R. BROWNING, Circuit Judge.
 
 
 25
 This case arises from an accident on Route 5, a Bureau of Indian Affairs ("BIA") road within the Northern Cheyenne Indian Reservation in Big Horn County, Montana. On the evening of May 2, 1998, Kale Means, a member of the Cheyenne Tribe and a minor, was seriously injured when his car struck a horse that had wandered onto Route 5. The horse belonged to Arthur L. McDonald, who operated a quarter horse ranching operation on land he owns in fee within the exterior boundaries of the Northern Cheyenne Reservation. Mr. McDonald is an enrolled member of the Ogalala Sioux Tribe, but he is not a member of the Northern Cheyenne Tribe.
 
 
 26
 On March 4, 1999, Patti Means, guardian for Kale Means, brought a civil action against Arthur McDonald and his family in the Northern Cheyenne Tribal Court, alleging McDonald was negligent in allowing his horse to trespass onto Route 5. The McDonalds filed suit in the United States district court for the district of Montana, challenging the tribal court's jurisdiction over the dispute. The district court rejected the Tribe's motion to intervene and held that the tribal court lacked jurisdiction, granting summary judgment for the McDonalds and enjoining Means from pursuing his action in tribal court. Means appeals the district court's grant of summary judgment, and we reverse. The Tribe appeals the denial of their motion to intervene, and we affirm.
 
 DISCUSSION
 1. Tribal Jurisdiction[1]
 
 27
 Tribes maintain considerable authority over the conduct of both tribal members and nonmembers on Indian land, or land held in trust for a tribe by the United States. Strate v. A-1 Contractors, 520 U.S. 438, 454, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997); Williams v. Lee, 358 U.S. 217, 222, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). However, in Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), the Supreme Court held that a tribal court lacks authority over the conduct of nonmembers on land within a reservation that is owned in fee by a non-Indian.[2] Id. at 565-566, 101 S.Ct. 1245.
 
 
 28
 Strate v. A-1 Contractors addressed tribal court jurisdiction over a suit arising from an accident on a state highway that ran through the Fort Berthold Indian Reservation in North Dakota. 520 U.S. at 442, 117 S.Ct. 1404. The Court held that by granting North Dakota a right-of-way to maintain the highway, the Tribe had, in effect, alienated the land to a non-member, and that the general rule in Montana thus applied to bar civil jurisdiction over the suit. Id. at 456, 117 S.Ct. 1404. The Strate Court reserved the question of civil jurisdiction over nonmember conduct on tribal roads. Id. at 442, 117 S.Ct. 1404.
 
 
 29
 The district court rejected tribal jurisdiction because it equated Route 5 with the state highway held in Strate to constitute alienated non-Indian land governed by the rule in Montana. Means argues that Route 5 is in fact a tribal road exempted from the Strate analysis, and that the Tribe retained an interest in the road sufficient to survive the Montana rule barring tribal jurisdiction. The primary issue in this case is thus whether BIA roads, like the state highway considered in Strate, are non-Indian fee land subject to the Montana rule. We conclude that BIA roads constitute tribal roads not subject to Strate, and that the BIA right-of-way did not extinguish the Tribe's gatekeeping rights to the extent necessary to bar tribal court jurisdiction under Montana.
 
 
 30
 A. Route 5 is a "tribal road" not governed by Strate.
 
 
 31
 Strate held that a tribal court may not hear civil claims against nonmembers arising from accidents on a state highway that crosses a reservation, because the tribe had relinquished all gatekeeping rights over the highway right-of-way. Strate, 520 U.S. at 455-56, 117 S.Ct. 1404. However, the Court qualified that holding by noting that it "express[ed] no view on the governing law or proper forum when an accident occurs on a tribal road within a reservation." Id. at 442, 117 S.Ct. 1404. We conclude that Route 5, as a BIA road, is a tribal road expressly reserved from the rule in Strate.
 
 
 32
 Title 25, Part 170 of the Code of Federal Regulations ("Roads of the Bureau of Indian Affairs") makes clear that a BIA road is considered an "Indian reservation road," 25 C.F.R. § 170.1. This is so even where a road serves both Indian and non-Indian land, see id. at § 170.7, and even though BIA roads are generally open to public use, id. at § 170.8. BIA roads are constructed on reservations "to provide an adequate system of road facilities serving Indian lands," id. at § 170.3, and are held by the BIA in trust for the benefit of the tribe, see United States v. Mitchell, 463 U.S. 206, 224, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). An "Indian reservation road" serving Indian land and held in trust for a tribe is a "tribal road."
 
 
 33
 Precedent supports this conclusion. The Supreme Court declined to distinguish between tribal and BIA roads in White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 148 n. 14, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980) (noting, in the context of federal preemption, "we see no basis, and respondents point to none, for distinguishing between roads maintained by the Tribe and roads maintained by the Bureau of Indian Affairs"). The Ninth Circuit also equated a BIA road with a tribal road in Allstate v. Stump, 191 F.3d 1071, 1072 (9th Cir.1999) (describing an accident on Route 9, a BIA road,[3] as occurring "on a tribal road in the Rocky Boy Reservation"). As a definitional matter, BIA roads like Route 5 are tribal roads not subject to the rule barring jurisdiction in Strate.
 
 
 34
 
 B. Route 5 is not "non-Indian fee land" under Montana.
 
 
 
 35
 Having concluded that Route 5 falls outside the direct scope of Strate, we nevertheless consider whether the facts support tribal jurisdiction under the Montana rule that tribes lack authority over the conduct of nonmembers on non-Indian fee land within a reservation. Montana, 450 U.S. at 565-66, 101 S.Ct. 1245; Strate, 520 U.S. at 446, 117 S.Ct. 1404 (summarizing Montana and stating that "[t]he term `non-Indian fee lands,' as used in this passage and throughout the Montana opinion, refers to reservation land acquired in fee simple by non-Indian owners"). We hold that they do, because Route 5 cannot be considered "non-Indian fee land."
 
 
 36
 Although the Northern Cheyenne tribe reserved no express right of dominion when it granted the Route 5 right-of-way to the BIA, the grant is held by the federal government in trust for the tribe, for the direct benefit of the tribe.[4] It is hardly an unencumbered fee (and only loosely owned by a non-Indian). It is well established that the BIA holds a fiduciary relationship to Indian tribes, and its management of tribal rights-of-way is subject to the same fiduciary duties. Mitchell, 463 U.S. at 224-226, 103 S.Ct. 2961. The Route 5 right-of-way was granted to the Bureau of Indian Affairs "to provide an adequate system of road facilities serving Indian lands." 25 C.F.R. § 170.3. The state recipient of the right-of-way held in Strate to constitute non-Indian fee land had no comparable duty. That right-of-way was granted to North Dakota for a specific, non-Indian related purpose: "to facilitate public access to Lake Sakakawea, a federal water resource project under the control of the Army Corps of Engineers." Strate, 520 U.S. at 455, 117 S.Ct. 1404.[5] Route 5 is not "land acquired in fee simple by non-Indian owners." Strate, 520 U.S. at 446, 117 S.Ct. 1404.
 
 
 37
 That the tribal court may exercise jurisdiction over a claim arising on Route 5 is buttressed by the Supreme Court's application of the Montana test in Strate.[6] In determining that the state highway there in question constituted non-Indian fee land, the Strate Court hinged tribal jurisdiction on the degree to which the tribe had retained gatekeeping rights over the right-of-way. Strate, 520 U.S. at 455-56, 117 S.Ct. 1404. Examining the Route 5 right-of-way against similar standards, we conclude that the scope of rights and responsibilities retained by a tribe over a BIA road exceed those retained over the state highway in Strate, and that these additional retained rights suffice to maintain tribal jurisdiction over nonmember conduct on BIA roads.
 
 
 38
 In Strate, the Court found that the highway was non-Indian fee land because the grant extinguished in the tribe the landowner's right to occupy and exclude:
 
 
 39
 Forming part of the State's highway, the right-of-way is open to the public, and traffic on it is subject to the State's control. The Tribes have consented to, and received payment for, the State's use of the 6.59-mile stretch for a public highway. They have retained no gatekeeping right. So long as the stretch is maintained as part of the State's highway, the Tribes cannot assert a landowner's right to occupy and exclude. We therefore align the right-of-way, for the purpose at hand, with land alienated to non-Indians. Our decision in Montana, accordingly, governs this case.
 
 
 40
 Id. at 455-56, 117 S.Ct. 1404 (citations omitted). In determining that the tribe had lost its right to occupy and exclude (and the corresponding right to exercise tribal jurisdiction), Strate relied on five factors: (1) the right of way formed part of the State's high-way, (2) it was held open to the public, (3) traffic was subject to state control, (4) the tribe consented to the State's use of the property, and (5) the tribe received payment for use of the property. Id.
 
 
 41
 We consider these factors in evaluating the status of the Route 5 right-of-way. Although the Northern Cheyenne relinquished certain gatekeeping rights in allowing public use of Route 5 and in collaborating with the BIA to maintain it, the Tribe maintained others of significance. The BIA right-of-way is not granted to the State, and forms no part of the State's highway system. The Code of Federal Regulations specifically distinguishes BIA roads on reservations from other public roads on reservations that are federally funded via the State through the Federal Aid Highway Act. 25 C.F.R. § 170.2(f).
 
 
 42
 Moreover, the Route 5 grant preserves to the Tribe considerable rights and responsibility over traffic and maintenance on the right-of-way. See generally 25 C.F.R. § 170. For example, the Code of Federal Regulations makes clear that "[t]he administration and maintenance of Indian reservation roads and bridges is basically a function of the local government," 25 C.F.R. § 170.6, which, as regards Route 5, is the Northern Cheyenne Tribe. The Commissioner of Indian Affairs, who is responsible for BIA road planning and design, must secure tribal consent at every stage of road design and construction:
 
 
 43
 The Commissioner ... shall keep the appropriate local tribal officials informed of all technical information relating to the project alternatives of proposed road developments. The Commissioner shall recommend to the tribe those proposed road projects having the greatest need as determined by the comprehensive transportation analysis. Tribes shall then establish annual priorities for road construction projects. Subject to the approval of the Commissioner, the annual selection of road projects for construction shall be performed by tribes.
 
 
 44
 25 C.F.R. § 170.4a. The Commissioner must also obtain tribal consent before assigning rights-of-way for surveying and construction. 25 C.F.R. § 170.5(a). The Commissioner must make recommendations to local (tribal) officials about maximum speed and weight limits, and other regulatory needs, and may only erect corresponding signs with tribal permission. 25 C.F.R. § 170.8(b). Only the tribe is authorized to enact and enforce such ordinances on Indian lands. Id. Although Part 170.8(a) designates BIA roads as generally open for public use, the Commissioner may, on behalf of the tribe, restrict such use or close the road to all public use "when required for public safety, fire prevention or suppression, or fish and game protection, or to prevent damage to unstable roadbed." 25 C.F.R. § 170.8(a).[7] Because of these provisions, traffic on Route 5 is subject to a degree of tribal control not present in Strate.
 
 
 45
 In granting the Route 5 right-of-way, the Northern Cheyenne Tribe relinquished some, but not all, of the sticks that form the landowner's traditional bundle of gatekeeping rights. The tribe has consented to public use of the road. However, traffic on the road remains subject to the authority of the tribe, both in rulemaking and enforcement. No meaningful compensation was received by the Tribe in exchange for the right-of-way,[8] presumably because the right-of-way is maintained, as all BIA properties are, for the benefit of the tribe. We conclude that under Montana, the Tribe retained enough of its gatekeeping rights that Route 5 cannot be considered non-Indian fee land, and that the Tribe thus maintains jurisdiction over Route 5.
 
 
 46
 McDonald argues that the majority's analysis "is not consistent with" the Supreme Court's decision in Nevada v. Hicks, 533 U.S. 353, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001), that the ownership status of land is not dispositive in determining that a tribal court lacks jurisdiction over a civil claim against state officers who enter tribal land to execute a search warrant against a tribe member suspected of having violated state law outside the reservation. 533 U.S. at 360, 121 S.Ct. 2304. However, the Court noted that "[o]ur holding in this case is limited to the question of tribal-court jurisdiction over state officers enforcing state law. We leave open the question of tribal-court jurisdiction over nonmember defendants in general." Id. at 358, n. 2, 121 S.Ct. 2304; see also id. at 386, 121 S.Ct. 2304 (Ginsburg, J., concurring) (writing separately to emphasize that the question of tribal jurisdiction over other nonmember defendants remains open). The limited nature of Hicks's holding renders it inapplicable to the present case.[9]
 
 
 47
 We hold that the nature and purpose of the grant, the continuing control exercised by the Tribe over the road, and the Supreme Court's previous treatment of BIA roads support the conclusion that the tribal court had jurisdiction to entertain Means's suit against the McDonald family.[10]
 
 2. Intervention
 
 48
 The Tribe sought and was denied intervention in the district court action.[11] The Tribe argues the district court applied the wrong standard, inappropriately requiring that an intervenor must possess a "direct economic stake" in the action. The Tribe asserts that its interest in preserving jurisdiction over Route 5 and "to provide a judicial forum for its members" suffices to justify intervention.
 
 
 49
 A petitioner seeking intervention of right under Federal Rule of Civil Procedure Rule 24(a) "must (1) make a timely motion, (2) claim a significantly protectable interest in the property that is the subject of the action, (3) demonstrate an impairment of its ability to protect that interest, and (4) prove that the interest is inadequately represented by the parties to the action." Montana v. U.S. Environmental Protection Agency, 137 F.3d 1135, 1141 (9th Cir.1998).
 
 
 50
 The petition for intervention fails because the Tribe cannot show a protectable interest in the property that is the subject of the action. The Tribe lacks any interest in the Means's damages claim; it seeks only to protect a general sovereignty interest in controlling Route 5. When we considered the similar question of whether a tribe is an "indispensable party" under Rule 19(a), we concluded that a tribe does not have "a legally protected interest in maintaining a court system," and that holding that a tribe is a necessary party "whenever [its] jurisdiction is challenged would lead to absurd results." Yellowstone County v. Pease, 96 F.3d 1169, 1173 (9th Cir.1996). The Tribe also claims as a protectable property interest its ability to collect fees from non-member contractors who work on Route 5, but the property at issue here is not Route 5 itself but a tort claim for damages.
 
 
 51
 The Tribe has not shown that its interest is inadequately represented. Appellant Means has argued vigorously that the tribal court has jurisdiction over torts occurring on Route 5. As evidence that Means cannot adequately represent the Tribe's interests, the Tribe points to his omission of one argument that it believes provides support for a finding of tribal jurisdiction. However, Means has presented a wide array of arguments to show that Route 5 is the equivalent of a tribal road.
 
 
 52
 Courts have broad discretion to deny permissive intervention under Federal Rule of Civil Procedure 24(b). See, e.g., San Jose Mercury News, Inc., 187 F.3d at 1100. We cannot say that the district court erred in denying the Tribe permission to intervene.
 
 CONCLUSION
 
 53
 Accordingly, the district court's grant of summary judgment for the defendant on grounds that the tribal court lacked jurisdiction is REVERSED. The district court's decision to deny the Northern Cheyenne Tribe's petition to intervene is AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 We review a grant of summary judgment de novoWeiner v. San Diego County, 210 F.3d 1025, 1028 (9th Cir.2000).
 
 
 [2]
 Montana announced two exceptions to the general rule that tribes lack jurisdiction over nonmembers on non-Indian land: the first applies to non-members who enter consensual relationships with the tribe or its members; the second applies to activity that directly affects the tribe's political integrity, economic security, health, or welfare. Montana, 450 U.S. at 565-66, 101 S.Ct. 1245. Neither exception applies here.
 
 
 [3]
 The Brief for Appellees Vina Stump and Vernon The Boy identifies the tribal road at issue inAllstate v. Stump as Route 9, and Means has provided this court with documentation showing that a Route 9 right-of-way similar to that for Route 5 was granted to the BIA.
 
 
 [4]
 Strate rejected the argument that Montana did not govern because the land underlying the conveyed right-of-way was held in trust for the tribe. 520 U.S. at 454, 117 S.Ct. 1404. In Strate, the right-of-way itself was conveyed wholly to the state. Here, however, both the underlying land and the right-of-way itself were conveyed in trust for the tribe.
 
 
 [5]
 Similarly, we decided that tribal jurisdiction was lacking over an accident that occurred on a reservation right-of-way inBoxx v. Long Warrior, 265 F.3d 771, 775 (9th Cir.2001), because that right-of-way was granted to the National Park Service "for road purposes in perpetuity, including without limitation by reason of enumeration, the right to construct, maintain and use road, road turn offs, scenic view areas and parking areas."
 
 
 [6]
 Although a claim arising on Route 5 is not governed by the result inStrate, that opinion provides a helpful model of how we should evaluate a tribal road right-of-way under Montana.
 
 
 [7]
 While this does not differ greatly from what happens on other state and federal roads, it also differs little from what happens on other tribal roads: generally, all are open for public use until they are closed for one of the above-listed public purposes
 
 
 [8]
 The grant of easement states that the tribe received one dollar in exchange for the right-of-way
 
 
 [9]
 McDonald argues thatHicks suggests the rule in Montana should be extended to bar tribal jurisdiction not only over the conduct of nonmembers on non-Indian fee land but on tribal land as well. See 533 U.S. at 359, 121 S.Ct. 2304 (interpreting Montana to state a "`general proposition [that] the inherent sovereign powers of an Indian Tribe do not extend the activities of nonmembers of the tribe' except to the extent `necessary to protect tribal self-government or to control internal relations'"). Montana itself limited its holding to nonmember conduct on non-Indian fee land, 450 U.S. at 557, 101 S.Ct. 1245 ("[T]he power of the Tribe to regulate non-Indian fishing and hunting on reservation land owned in fee by nonmembers of the Tribe."), and Strate confirmed that limitation, 520 U.S. at 446, 117 S.Ct. 1404 ("Montana thus described a general rule that ... Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation....). Even if Hicks could be interpreted as suggesting that the Montana rule is more generally applicable than either Montana or Strate have allowed, Hicks makes no claim that it modifies or overrules Montana.
 The Supreme Court has cautioned that "if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." Agostini v. Felton, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (quoting Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)). Montana limits its scope to a Tribe's civil authority over the conduct of nonmembers on non-Indian fee land, and Strate affirms that limitation. Our holding therefore fits squarely within Montana, which both Strate and Hicks characterize as the "pathmarking case." See Hicks, 533 U.S. at 358, 121 S.Ct. 2304; Strate, 520 U.S. at 445, 117 S.Ct. 1404.
 
 
 [10]
 As an Ogalala Sioux, McDonald is also subject to the criminal jurisdiction of the Northern Cheyenne Tribal Court. See 25 U.S.C. § 1301(2) (establishing "the inherent power of Indian tribes ... to exercise criminal jurisdiction over all Indians");United States v. Enas, 255 F.3d 662 (2001) (en banc), cert. denied, 534 U.S. 1115, 122 S.Ct. 925, 151 L.Ed.2d 888 (2002). Thus the tribal court in this case is merely exercising civil jurisdiction over a defendant whom it could prosecute criminally.
 
 
 [11]
 The Tribe sought intervention as a matter of right, and alternatively sought permissive intervention. The decision to deny intervention as of right is reviewed de novoWaller v. Financial Corp. of America, 828 F.2d 579, 582 (9th Cir.1987). The decision to deny permissive intervention is "directed to the sound discretion of the district court." San Jose Mercury News v. U.S. District Court, 187 F.3d 1096, 1100 (9th Cir.1999).
 
 
 WALLACE, Senior Circuit Judge, dissenting:
 
 54
 The majority concludes that a tribal court has the inherent authority to exercise civil jurisdiction over tribal nonmembers acting on tribal land within reservation boundaries. I dissent because I believe the majority's decision is inconsistent with over two decades of Supreme Court precedent on the subject of tribal inherent authority. The Court long ago cast aside the notion that a tribe has the inherent authority to exercise jurisdiction over anyone within reservation boundaries. Montana v. United States, 450 U.S. 544, 565, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). Indeed, tribal inherent authority has consistently been confined to those circumstances in which a particular jurisdictional exercise is necessary to protect the tribe's ability to govern itself. Strate v. A-1 Contractors, 520 U.S. 438, 459, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997).
 
 
 55
 As the Supreme Court has stated, a tribe has the inherent authority "to punish tribal offenders, ... to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members." Montana, 450 U.S. at 564, 101 S.Ct. 1245 (citation omitted). With two exceptions, a tribe lacks the inherent authority to exercise civil jurisdiction over non-members acting on "fee land" (land owned in fee by tribal nonmembers within reservation boundaries). Id. at 563-66, 101 S.Ct. 1245 (tribe lacks the inherent authority to ban hunting and fishing by nonmembers on non-Indian property within reservation boundaries), Strate, 520 U.S. at 459, 117 S.Ct. 1404 (tribal court lacks the inherent authority to exercise jurisdiction over tribal nonmember that allegedly committed a tort on fee land).
 
 
 56
 In its decisions on the subject of tribal inherent authority, the Court has repeatedly emphasized that "[a tribe's inherent power does not reach] beyond what is necessary to protect tribal self-government or to control internal relations." Id. (quoting Montana, 450 U.S. at 564, 101 S.Ct. 1245) (quotation marks omitted, alteration in original). In keeping with this principle, the Court has stated that "the inherent sovereign powers of an Indian tribe — those powers a tribe enjoys apart from express provision by treaty or statute — do not extend to the activities of nonmembers of the tribe." Id. at 445-46, 117 S.Ct. 1404 (quoting Montana, 450 U.S. at 565, 101 S.Ct. 1245) (quotation marks omitted).
 
 
 57
 The rule that a tribe may not exercise jurisdiction over a nonmember has two exceptions. First, a tribe may exercise civil jurisdiction over a nonmember if the nonmember has entered into a "consensual relationship[ ] with the tribe or its members." Id. at 446, 117 S.Ct. 1404. Second, a tribe may exercise civil jurisdiction over a nonmember if the nonmember's "activity... directly affects the tribe's political integrity, economic security, health, or welfare." Id.
 
 
 58
 The majority's mistake now becomes clear. The majority establishes a presumption in favor of tribal civil jurisdiction over nonmembers in cases involving tribal land (land owned by the tribe within reservation boundaries). Maj. Op. at 536. This startling statement turns the Court's long-standing approach to tribal inherent authority on its head.
 
 
 59
 The majority relies on two cases to accomplish this end. The first is Strate v. A-1 Contractors, 520 U.S. at 454, 117 S.Ct. 1404. Relying on Montana, the Strate opinion reasoned that "tribes retain considerable control over nonmember conduct on tribal land." Id. While I agree with this statement, I do not agree that it amounts to a general presumption in favor of tribal civil jurisdiction over nonmembers in cases that arise on tribal land. Both the footnote appended to the end of the quotation taken by the majority from Strate, id. n. 8, and the reliance on Montana that precedes the quoted language suggest that the Court was referring to a tribe's ability to "prohibit nonmembers from hunting or fishing on land belonging to the Tribe...." Montana, 450 U.S. at 557, 101 S.Ct. 1245. That a tribe has this inherent authority is well settled. This does not mean that a tribe may exercise civil jurisdiction over nonmembers in all cases that arise on tribal land. Indeed, Strate, after applying Montana's presumption against a tribe's inherent authority in a case that arose on fee land, left open the question of whether the Montana rule extended to accident cases that arise on a tribal road within a reservation. Strate, 520 U.S. at 442, 117 S.Ct. 1404.
 
 
 60
 The majority also relies on Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), a case approaching its half-century birthday. Williams assumed without deciding that tribal courts have criminal and civil jurisdiction over anyone acting within reservation boundaries, not just on tribal land. Id. at 223, 79 S.Ct. 269. Because this assumption was cast aside long ago, it is hardly support for the majority's presumption theory. See Oliphant, 435 U.S. at 212, 98 S.Ct. 1011; Montana, 450 U.S. at 566-567, 101 S.Ct. 1245; Strate, 520 U.S. at 442, 117 S.Ct. 1404.
 
 
 61
 Consequently, and contrary to the majority's position, no current authority from the Supreme Court or from any circuit court supports the view that the Montana rule does not apply to tribal land cases. In fact, the opposite is true. The recent Supreme Court decision of Nevada v. Hicks, 533 U.S. 353, 359-60, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) interpreted Montana to apply to tribal land cases. Specifically, the Supreme Court emphasized that Montana's caution that "Indian tribes retain inherent sovereignty over non-Indians on their reservations, even on non-Indian fee lands," 450 U.S. at 565, 101 S.Ct. 1245, clearly implies "that the general rule of Montana applies to both Indian and non-Indian land." 533 U.S. at 359-60, 121 S.Ct. 2304. Hicks thus clarified that "the existence of tribal ownership is not alone enough to support regulatory jurisdiction over nonmembers." Id. at 360, 121 S.Ct. 2304.
 
 
 62
 The majority throws Hicks aside because of the limited nature of Hicks' holding. While I agree that Hicks is "limited to the question of tribal-court jurisdiction over state officers enforcing state law," id. at 358, n. 2, 121 S.Ct. 2304, Hicks' interpretation of Montana should nonetheless guide our decision. The majority's reliance on Agostini v. Felton, 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997), misses the mark. Agostini warns us that "if a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls." Id. at 237, 117 S.Ct. 1997. Yet here, no Supreme Court precedent has direct application, and Hicks did not reject the reasons of its prior cases, but merely interpreted them.
 
 
 63
 When confronted with a question of first impression, it is our duty to consider how the "Supreme Court would decide the pending case today." Vukasovich, Inc. v. Commissioner, 790 F.2d 1409, 1416 (9th Cir.1986). We must examine the thrust of the Supreme Court cases in this area and determine, as best we can, where the Court is leading us. Hicks, though limited, counsels us to extend the Montana rule to tribal land cases. Even before Hicks, the Supreme Court has repeatedly stated that its decisions on the subject of tribal inherent authority rest on the "general proposition" that "the inherent sovereign powers of an Indian tribe ... do not extend to the activities of nonmembers of the tribe." Strate, 520 U.S. at 445-46, 117 S.Ct. 1404 (citation and quotation marks omitted). This is because the concept of inherent authority is meant to protect a tribe's ability to govern itself and to "control internal relations." Id. at 459, 117 S.Ct. 1404 (citation and quotation marks omitted). I have no doubt that nonmember acts on tribal land will often implicate these core concerns. Indeed, a tribe's ability to regulate hunting and fishing on its own land is undoubtedly vital to its economic welfare. Montana, 450 U.S. at 557, 101 S.Ct. 1245. I am equally confident, however, that many nonmember acts on tribal land will be wholly unrelated to a tribe's ability to govern itself. It would be difficult to argue, for example, that a tort committed by a nonmember against another nonmember on tribal land implicates the core concerns identified by the Court in Strate. Yet, a tribal court would have the inherent authority to hear such a case under the majority's position.
 
 
 64
 Unlike the majority's approach, the Montana rule and its exceptions protect only those jurisdictional exercises that are necessary "to protect tribal self-government or to control internal relations." Strate, 520 U.S. at 459, 117 S.Ct. 1404 (citation and quotation marks omitted). Thus, if Montana were applied to tribal land cases, a tribal court would not have inherent authority to hear the nonmember tort case described above but it would have inherent authority to exercise civil jurisdiction over a nonmember that either entered into a "consensual relationship with the tribe or its members" or engaged in an "activity that directly affect[ed] the tribe's political integrity, economic security, health or welfare." Strate, 520 U.S. at 446, 117 S.Ct. 1404.
 
 
 65
 Would the Northern Cheyenne Tribe have the inherent authority to assert jurisdiction over this case — a case involving a tort allegedly committed by a nonmember against a member — if we were to apply the Montana rule? I conclude that the tribal court lacks jurisdiction because neither Montana exception applies. The tort that is the subject matter before us on this appeal did not arise out of a consensual relationship between McDonald and the tribe or a tribe member. Further, the injury that Means sustained did not "imperil the political integrity, the economic security, or the health and welfare of the [t]ribe." Wilson v. Marchington, 127 F.3d 805, 815 (9th Cir.1997) (citation and quotation marks omitted).
 
 
 66
 I point out that our case deals only with the tribe's inherent jurisdiction. By concluding there is no inherent jurisdiction in this case, I express no view on whether it would be a better public policy for the Northern Cheyenne Tribe to have civil jurisdiction over a case like this. That is a question better left to Congress. Montana, 450 U.S. at 564, 101 S.Ct. 1245 (a tribe may not "exercise ... tribal power beyond what is necessary to protect tribal self-government or to control internal relations... without express congressional delegation.") (citations omitted).
 
 
 67
 One final matter warrants attention. In a footnote, the majority suggests that its conclusion is supported by the fact that "the tribal court in this case is merely exercising civil jurisdiction over a defendant whom it could prosecute criminally." This footnote suggests that tribal civil jurisdiction may be analyzed by an Indian/non-Indian distinction, rather than the member/nonmember distinction. I separate myself from this dicta, and mention that this, too, is an open question.
 
 
 68
 The majority cites United States v. Enas, 255 F.3d 662 (9th Cir.2001) (en banc), which held that tribes retain inherent sovereignty to exercise criminal jurisdiction over Indians, irrespective of whether the Indian defendant is a member of the tribe. Yet Enas did not determine whether tribes retain inherent sovereignty to exercise civil jurisdiction over non-member Indians. Though Congress has restored tribal criminal jurisdiction over nonmember Indians in 25 U.S.C. § 1301(2), it has not delegated this authority in civil disputes.
 
 
 69
 Neither the Supreme Court nor the Ninth Circuit has answered the question of tribal civil jurisdiction over non-member Indians. However, the Supreme Court hints that even if the defendant is an Indian, his status as a nonmember governs the court's analysis. Hicks, 533 U.S. at 377, n. 2, 121 S.Ct. 2304 (Souter, J., concurring) ("the relevant distinction, as we implicitly acknowledged in Strate, is between members and nonmembers of the tribe"); Strate, 520 U.S. at 445-46, 117 S.Ct. 1404 (stating that a tribe's inherent sovereign powers "do not extend to the activities of nonmembers," and on the same page recognizing that some tribal nonmembers are also Indians) (internal citation omitted); Washington v. Confederated Tribes of Colville Reservation, 447 U.S. 134, 161, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) (holding that state's taxing power over nonmember Indians is equivalent to its taxing power over non-Indians because "nonmembers are not constituents of the governing Tribe. For most practical purposes those Indians stand on the same footing as non-Indians resident on the reservation. There is no evidence that nonmembers have a say in tribal affairs or significantly share in tribal disbursements."). Because the majority's footnote is dicta, and merely suggests (but does not decide) that civil jurisdiction may be analyzed under the Indian/non-Indian distinction, I state no opinion on the matter here.